IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RELIASTAR LIFE INSURANCE COMPANY :
         Plaintiff  :
           :
   v.  : 1:CV-08-1942
           : (JUDGE VANASKIE)
FAY MOORE,  :
KRISTI HATFIELD-BINGAMAN  :
         Defendants  :

## MEMORANDUM

This interpleader action was brought by ReliaStar Life Insurance Company ("ReliaStar") against competing claimants to the proceeds of a life insurance policy under a Group Life Insurance Plan in which Budd A. Moore, a now-deceased employee of the Board of Education of Washington County, participated. Kristi Hatfield-Bingaman, the deceased's niece, claims the proceeds as the named beneficiary on the plan. Fay Moore, the deceased's wife, is the second claimant to the proceeds. ReliaStar, acknowledging its liability for the payment of the life insurance benefits, has deposited $150,503.88 with the Court and has moved for dismissal from the action. It also requests costs and attorneys' fees incurred in bringing this interpleader action. (Dkt. 25.)[1] As the parties do not opposed ReliaStar's dismissal from this action, the

---

[1] For the convenience of the reader of this Memorandum opinion in electronic format, hyperlinks to the Court's record and to authority cited herein have been inserted. The Court accepts no responsibility for, and does not endorse, any product, organization, or content at any hyperlinked site, or at any site to which that site might be linked. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

Motion to Dismiss Party ReliaStar Life Insurance will be granted. ReliaStar's motions for attorney's fees and for bill of costs, however, will be denied as the current action is a typical claim that ReliaStar normally faces in the ordinary course of business.

I. BACKGROUND

ReliaStar issued a group life insurance policy, number 26257-9GAT ("the Policy"), to the Board of Education of Washington County as part of its employee welfare benefit plan. (Comp., Dkt. 1, at ¶ 6.) Budd A. Moore ("Budd"), as an employee of the Board of Education of Washington County, was eligible for basic life insurance and supplemental life insurance benefits under the Policy. (ReliaStar Supp. Br., Dkt. 26, at 2.) On June 8, 1994, Budd completed a Beneficiary Designation form, naming his niece, Kristi Lynn Hatfield (nka Kristi Lynn Hatfield-Bingaman) ("Hatfield-Bingaman"), as the primary beneficiary. (Comp., Dkt. 1, at ¶ 8.) On April 21, 2008, Budd passed away. (Id. at ¶ 9.)

On May 8, 2008, Hatfield-Bingaman, Budd's primary beneficiary under the Policy, signed a document titled "Disclaimer." (Id. at ¶ 10.) The document stated that Hatfield-Bingaman does "hereby disclaim any and all of my rights under the aforesaid policy as primary beneficiary, and do[es] direct that the policy benefits be paid to the Estate of Budd A. Moore." (Id.) That same day, Defendant Faye Moore ("Moore"), the executrix of Budd's estate and Budd's widow, filed a death claim for the Policy proceeds by virtue of her status as the Executrix of Budd's Estate. (Id. at ¶ 11.)

On June 5, 2008, ReliaStar sent a letter to Hatfield-Bingaman stating that she was the primary beneficiary of the Policy and that ReliaStar understood that she wished to disclaim her interest in the Policy proceeds and direct them to Budd's estate. (Id. at ¶ 12.) "The letter explained that once a person disclaims any interest in the proceeds, that person cannot also direct the proceeds." (Id.) The letter also stated that if Hatfield-Bingaman "did wish to disclaim her interest, the proceeds would be payable under the preferential beneficiary clause of the contract, which allows payment to the first eligible surviving heir in the following order: spouse, children, parents, and estate." (Id.) Since Moore is Budd's living spouse, the letter indicated that all funds would be payable to her under the preferential clause. (Id.)

On June 11, 2008, ReliaStar received a telephone call from Hatfield-Bingaman in which she stated that she had been told to sign the Disclaimer at Faye Moore's attorney's office on May 8, 2008, or that legal action would be taken. (Id. at ¶ 13.) ReliaStar's records indicate that "Hatfield-Bingaman indicated to ReliaStar's claim department that she did not want to disclaim the proceeds and that she felt 'bombarded and threatened' in the attorney's office." (Id.)

On June 11, 2008, after receiving Hatfield-Bingaman's phone call, "ReliaStar sent a letter to Martha Walker, Esq., the attorney for Ms. Faye Moore," notifying Attorney Walker that Hatfield-Bingaman did not wish to disclaim her interest in the Policy proceeds. (Id. at ¶ 14.) The letter also suggested that Moore and Hatfield-Bingaman contact each other to determine if an amicable agreement could be reached in regard to the distribution of the Policy proceeds.

3

(Id.) The letter indicated that if an agreement was reached it should be in writing, notarized, and signed by both parties. (Id.) If, however, no agreement could be reached within sixty (60) days, the letter informed Ms. Walker that the file would be referred to attorneys for a possible interpleader action. (Id.)

Also on June 11, 2008, ReliaStar sent a letter to Hatfield-Bingaman confirming the telephone conversation in which she indicated that she did not wish to disclaim her interest in the Policy proceeds and suggesting that she contact Moore to determine if an amicable agreement could be reached with regard to the distribution of the Policy proceeds. (Id. at ¶ 15.) Again, the letter indicated that if an agreement was reached it should be in writing, notarized, and signed by both parties; if an agreement could not be reached, Hatfield-Bingaman was notified that ReliaStar would refer the file to attorneys for a possible interpleader action. (Id.)

On June 12, 2008, Hatfield-Bingaman filed a death claim for the Policy proceeds by virtue of her status as the named beneficiary on the Policy. (Id. at ¶ 16.) Consequently, there were two competing claims to the Policy proceeds. (Id. at ¶ 17.)

On July 9, 2008, ReliaStar received a letter from Attorney Walker "stating that no agreement to a distribution of the Policy proceeds had been reached by Ms. Moore and Ms. Hatfield-Bingaman and that ReliaStar should file an interpleader action." (Id. at ¶ 18.) On August 15, 2008, ReliaStar received a letter from an attorney retained by Hatfield-Bingaman demanding payment of the Policy proceeds to Hatfield-Bingaman. (Id. at ¶ 19.)

4

On October 23, 2008, ReliaStar initiated the current action. (Comp., Dkt. 1.) On December 19, 2008, ReliaStar filed a Motion for Leave to Deposit Interpleader Funds into the Registry of the Court. (Dkt. 7.) By order dated January 13, 2009, this Court granted the motion and ordered the Policy proceeds deposited in the Court's registry. (Dkt. 13.) On January 22, 2009, ReliaStar deposited a check in the amount of $150,503.88 ($74,000 in standard life benefits, $74,000 in supplemental life, and $2,503.88 in interest) into the Court's Registry. (Id.)

On June 23, 2009, ReliaStar filed a Motion for Dismissal and Fees (Dkt. 25), requesting this Court award ReliaStar costs and attorney's fees incurred as a result of bringing the above-captioned action and thereafter dismiss ReliaStar from the action. The motion has been fully briefed and is ripe for review.

II. DISCUSSION

    A.    Motion to Dismiss

Both Moore and Hatfield-Bingaman concur that ReliaStar is currently a disinterested stakeholder and should be dismissed from the action. (See Dkt. 27, at 1; Dkt. 28, at 1.) Accordingly, ReliaStar's motion to dismiss will be granted. See Metropolitan Life Ins. Co. v. Price, 501 F.3d 271, 275 (3d Cir. 2007).

    B.    Motion for Costs and Attorneys' Fees

In addition to seeking dismissal from the action, ReliaStar also requests cost and fees for bringing the above-captioned action. ReliaStar alleges it has "incurred reasonable and

necessary attorney's fees and litigation costs in the amount of $6,291.56 for McNees Wallace & Nurick's services, and reasonable and necessary attorney's fees in the amount of $5,423.00 for services rendered by Halleland, Lewis, Nilan & Johnson in this matter . . . ." (Dkt. 25, at 2.) Affidavits supporting these amounts were supplied. (Dkt. 25-2; Dkt. 25-3.)

It is Hatfield-Bingaman's position that ReliaStar "is not an innocent stakeholder, and contributed to the circumstances that led to the subject litigation. Plaintiff should have taken reasonable measures to contact Bingaman when it was notified of Decedent's death, and to deliver the policy proceeds to Bingaman, as named beneficiary." (Dkt. 28, at 6.) Moore agrees that ReliaStar is a disinterested stakeholder who should be dismissed from the case, but does not agree that attorney's fees or costs should be awarded. (Moore Opp. Br., Dkt. 27, at 1.)

"The equitable remedy of interpleader allows 'a person holding property to join in a single suit two or more persons asserting claims to that property.'" Price, 501 F.3d at 275 (quoting NYLife Dist., Inc. v. Adherence Group, Inc., 72 F.3d 371, 372 n.1 (3d Cir. 1995)); see SMA Life Assur. Co. v. Piller, No. 86-2959, 1986 WL 12937 (E.D. Pa. Nov. 13, 1986) ("The remedy of interpleader is designed to 'provide a forum in which a holder of money admittedly owing to someone and claimed by several parties may have the question of entitlement to the fund settled in one proceeding and be himself discharged from further liability as to the fund.'"). "A court has the discretion to award to an interpleader plaintiff attorneys fees and costs if the plaintiff is (1) a disinterested stakeholder, (2) who has conceded liability, (3) has deposited the

disputed funds with the court, and (4) has sought a discharge from liability." Metropolitan Life Ins. Co. v. Kubichek, 83 F. App'x 425, 431 (3d Cir. 2003) (citing Septembertide Publ'g, B.V. v. Stein & Day, Inc., 884 F.2d 675, 683 (2d Cir. 1989)).

"An award of reasonable counsel fees may be made where the party bringing the interpleader action is a disinterested stakeholder who is involved 'because he is the mutual target in a dispute which is not of his own making.'" Steamfitters Local Union v. Belfiglio, No. 90-4536, 1991 WL 15247, at *4 (E.D. Pa. Feb. 6, 1991) (quoting Massachusetts Mutual Life Ins. Co. v. Central Penn. Nat'l Bank, 372 F. Supp. 1027, 1044 (E.D. Pa. 1974), aff'd 510 F.2d 970 (3d Cir. 1975)). "Reasons cited as justification for an award of attorney fees to the stakeholder in an interpleader action include the stakeholder's role in helping the parties to the dispute to a prompt solution and the absence of serious depletion of the interpleader funds due to the 'minimal work' required to institute this type of action." Belfiglio, 1991 WL 15247, at *4 (quoting Central Penn. Nat'l Bank, 372 F. Supp. at 1044).

An award of attorneys' fees, however, is not appropriate in every case. In this regard, ReliaStar acknowledges that the decision to award fees is committed to the discretion of the court. See Home Corp. v. DeLone, No. Civ. A. 96-7672, 1997 WL 214849, at *5 (E.D. Pa. Apr. 23, 1997); AIG Life Ins. Co. v. Rafferty, No. 07cv3099, 2008 WL 1959697, at *1 (E.D. Pa. May 6, 2008). "The prevailing principle in interpleader actions brought in the federal courts, whether under the interpleader statute or under Fed. R. Civ. P. 22, is that it is within the discretion of the

court to award the stakeholder costs, including reasonable attorneys fees, out of the deposited fund." The Prudential Ins. Co. of America v. Richmond, No. Civ. A. 06-525, 2007 WL 1959252, at *4 (D.N.J. July 2, 2007). "Authority to award a stakeholder costs and fees does not derive from the interpleader statute or the rule, but is an equitable doctrine." Id.

"An award of attorney fees is not appropriate 'when a stakeholder has used the court to aid it in making a decision which is an ordinary one in the course of the stakeholder's business.'" Belfiglio, 1991 WL 15247, at *4 (quoting Fidelity Bank v. Commonwealth Marine & General Assurance Co., 592 F. Supp. 513, 526 (E.D. Pa. 1984)). "A court may deny fees where the stakeholder interpleaded funds simply to 'free itself from ongoing litigation or the vexation of multiple lawsuits.'" Allstate Settlement Corp. v. United States, Civ. A. No. 07-5123, 2008 WL 2221897, at *7 (E.D. Pa. May 28, 2008) (quoting Richmond, 2007 WL 1959252, at *4). By granting an award for attorneys fees when the decision made is one which is ordinarily handled during the regular course of business, the court is shifting "'some of the stakeholder's ordinary business expenses to the claimants.'" Id. (quoting Fidelity Bank, 592 F. Supp. at 526); Piller, 1986 WL 12937, at *2 ("'When a stakeholder has used the court to aid it in making a decision which is an ordinary one in the course of the stakeholder's business, an award of attorneys' fees is not appropriate . . . . Such an award would constitute a shifting of some of the stakeholder's ordinary business expenses to the claimants.'").

In Belfiglio, the court found that an award of attorneys' fees was appropriate because

8

the "interpretation of the Judgment of Divorce and Consent Order entered by the Superior Court of New Jersey" was outside the ordinary course of the plaintiffs' business. Belfiglio, 1991 WL 15247, at *4. In Allstate Settlement Corp., the court found that the determination of who was entitled to the annuity payments "did not fall squarely within the 'ordinary course' of Allstate's business," because "Allstate Settlement was assigned payment obligations, pursuant to a 'qualified assignment,' following the settlement of the underlying tort action." Allstate Settlement Corp., 2008 WL 2221897, at *7. Because Allstate was not the insurer on the action, it was not required to make any decisions as to the proper payee and accordingly the resolution of "competing claims to the established Periodic Payments clearly did not fall within the scope of Allstate Settlement's ordinary course of business as a qualified assignee." Id.

In Piller, the court refused to grant an award of counsel fees because the commencement of the interpleader action to determine the proper beneficiary of a life insurance policy was "a typical claim in the course of the plaintiff's business." Piller, 1986 WL 12937, at *2.

In AIG Life Insurance Company v. Rafferty, No. 07cv3099, 2008 WL 1959697, at *1 (E.D. Pa. May 6, 2008), the defendants, the decedent's former domestic partner and the decedent's children, both claimed that they were the sole beneficiaries of the policy. The court determined that an award of attorneys' fees would be inappropriate as "[i]nsurance companies must routinely determine the appropriate recipient in cases involving multiple claimants to

9

insurance benefits," and that costs associated with that determination should not be shifted to the fund or to the claimants. Id.

Here, as in Rafferty, ReliaStar has been called upon to determine the appropriate recipient in a case involving multiple claimants to insurance benefits. See id. As stated in Rafferty, this is an issue that insurance companies must routinely determine. Accordingly, the costs associated with such determination should not be shifted to the fund or to the claimants. See id.

ReliaStar's argument that it has been subjected to a real risk of vexatious, conflicting claims does not entitle it to attorneys fees. (Dkt. 23, at 9.) Vexatious conflicting claims, as discussed in Allstate Settlement, is not enough to establish entitlement to costs and fees. Allstate Settlement Corp., 2008 WL 2221897, at *7 ("A court may deny fees where the stakeholder interpleaded funds simply to 'free itself from ongoing litigation or the vexation of multiple lawsuits.'").

Furthermore, ReliaStar's argument that it is not seeking fees for work performed in the ordinary course of business is also without merit. ReliaStar cites no case law in support of the proposition that bringing an interpleader action to determine the proper beneficiary of a life insurance policy does not require this Court to perform an act which is within the ordinary course of ReliaStar's business. As in Piller, ReliaStar initiated this action to determine the rights of the parties and the proper beneficiary of a life insurance policy, which is a typical

determination made during the course of ReliaStar's business.  See Piller, 1986 WL 12937, at *2.

Moreover, as argued by Hatfield-Bingaman, ReliaStar alerted Moore's attorney about purported problems with the disclaimer without first contacting Hatfield-Bingaman.  There then ensued the submission of competing claims to the Policy benefits.  From the perspective of Hatfield-Bingaman, had ReliaStar not written to Moore's attorney and had she been informed that she was the designated beneficiary, she would have been paid the proceeds of the Policy.  Thus, from her vantage point, ReliaStar bears responsibility for the current controversy.

In Richmond, 2007 WL 1959252, at *4-5, the court exercised its discretion to deny fees to the interpleader plaintiff where the dispute pertained to the effect of disclaimers.  The court found that the interpleader plaintiff was responsible in part for the confusion concerning the determination of who was the proper claimant.  Likewise in this case, ReliaStar's handling of a disclaimer has played a substantial role in engendering this controversy.  As in Richmond, ReliaStar brought this suit to absolve itself of liability only after it helped create the confusion.  As in Richmond, an award of legal fees is inappropriate here.

III. CONCLUSION

For the above-stated reasons, ReliaStar's Motion to Dismiss (Dkt. 25) will be granted, but its Motion for Attorney Fees and Motion for Bill of Costs (Dkts. 25) will be denied. An appropriate Order follows.

s/ Thomas I. Vanaskie  
Thomas I. Vanaskie  
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RELIASTAR LIFE INSURANCE COMPANY :
         Plaintiff                          :
                                        :
    v.                                        :     1:CV-08-1942
                                        :     (JUDGE VANASKIE)
FAY MOORE,                          :
KRISTI HATFIELD-BINGAMAN    :
         Defendants                  :

ORDER

NOW, THIS 28th DAY OF FEBRUARY, 2010, for the reasons set forth in the foregoing memorandum, IT IS HEREBY ORDERED THAT:

    1.    Plaintiff ReliaStar Life Insurance Company's Motion to Dismiss (Dkt. 25) is GRANTED.

    2.    Plaintiff ReliaStar Life Insurance Company's Motion for Attorney Fees (Dkt. 25) and Motion for Bill of Costs (Dkt. 25) are DENIED.

    3. Plaintiff ReliaStar Life Insurance Company is discharged from further liability in this matter and is DISMISSED, WITH PREJUDICE.

                                                      s/ Thomas I. Vanaskie
                                                      Thomas I. Vanaskie
                                                      United States District Judge